**MLG AUTOMOTIVE LAW, APLC**
Jonathan Michaels (State Bar No. 180455)
Kathryn Harvey (State Bar No. 241029)
2801 W. Coast Highway Suite 370
Newport Beach, CA 92663
Telephone: (949) 581-6900
Facsimile: (949) 581-6908
jmichaels@mlgautomotivelaw.com
kharvey@mlgautomotivelaw.com

**CHIMICLES & TIKELLIS LLP**
Steven A. Schwartz
Benjamin F. Johns
Andrew W. Ferich
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
E-mail:  SAS@chimicles.com
          BFJ@chimicles.com
          AWF@chimicles.com

*Attorneys for Plaintiffs and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM ELGER and PHILIP ROSS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BEHR PROCESS CORPORATION; BEHR PAINT CORP.; MASCO CORPORATION; THE HOME DEPOT, INC.; and HOME DEPOT U.S.A., INC., <br><br> Defendants. | Case No. _____ <br><br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs William Elger and Philip Ross (hereinafter "Plaintiffs"), by and through their attorneys, bring this action against Defendants Behr Process Corporation, Behr Paint Corp., and MASCO Corporation ("MASCO") (together the "BEHR Defendants"), and The Home Depot, Inc., and Home Depot U.S.A., Inc. (together "The Home Depot") (collectively with the BEHR Defendants, "Defendants"), on behalf of themselves and all others similarly situated, and allege the following pursuant to the investigation of Plaintiffs' counsel and based on information and belief, except as to allegations specifically pertaining to Plaintiffs, which are made upon personal knowledge.

## NATURE OF THE CASE

1.     This is a consumer fraud class action brought by Plaintiffs on behalf of a class of all similarly situated purchasers of the BEHR PREMIUM DeckOver® deck and concrete resurfacing and restoration products ("DeckOver" or "DeckOver Product(s)"). Despite knowing that the DeckOver Products are defective, Defendants marketed and sold DeckOver to thousands upon thousands of unsuspecting consumers, causing those consumers to suffer extensive monetary damage.

2.     The DeckOver Products are intended to be used by consumers to repair and revitalize their existing decking, docks, porches, patios, or other wood and concrete surfaces by covering the surface with a thick, weather-resistant coating.  The BEHR Defendants market DeckOver Products as being of the highest quality.

3.     DeckOver Products are exclusively sold by The Home Depot on its website and at its brick-and-mortar locations.  The Home Depot explicitly adopts and utilizes the BEHR Defendants' marketing points and advertisements - in many occasions verbatim - in conjunction with making sales of DeckOver Products.

4.     The DeckOver Products are advertised by all Defendants as being capable of resurfacing and refinishing wood and concrete surfaces with easy application for results that resist cracks, peeling, and mildew, and provide comfort for bare feet, all in one product. For example, Defendants advertise that DeckOver is "great for decks, railings, patios, composite decks, pool decks and walkways"; able to "conceal cracks and splinters up to 1/4 [inch]"; able to "create[] a smooth, slip-resistant finish"; able to "resist[] cracking and peeling"; and able to "[b]ring new life to old wood and concrete surfaces."[1]

5.     BEHR Defendants tout DeckOver Products as a "Premium" product that is "innovative," will bring decking or other surfaces "back to life," and "rejuvenate[s]" the look of decks and other surfaces.[2]   BEHR Defendants claim that their DeckOver Product is "revolutionary" and offers "excellent adhesion."[3]

6.     As seen below, these and other representations are advertised right on the DeckOver product label itself, which consumers are uniformly exposed to at the time of purchasing pails of DeckOver at Home Depot locations (and identical advertising and representations on the webpage for DeckOver on Home Depot's website).

---

[1] http://www.behr.com/consumer/products/wood-stains-finishes-cleaners-and-strippers/behr-premium-deckover (last visited June 16, 2017); http://www.behr.com/consumer/products/deckover (last visited June 16, 2017).
[2] http://www.behr.com/cma/BehrPro/Marketing/Products/TDS/5000_R914.pdf (last visited June 16, 2017); http://www.homedepot.com/p/BEHR-Premium-DeckOver-1-gal-Wood-and-Concrete-Paint-500005/203545967?N=5yc1vZc7gv (last visited June 16, 2017).
[3] https://www.youtube.com/watch?v=OjHWwV6J7PU (last visited June 16, 2017).

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11



12    7.    But contrary to Defendants' advertising and representations, the
13 DeckOver Products are plagued by flaws that cause them to fail to adhere properly
14 to underlying surfaces, even when properly applied. The result is that DeckOver
15 Products routinely peel, crack, and bubble, and often causing damage to the
16 property to which the DeckOver Products are applied.

17    8.    Despite knowing that DeckOver is flawed and prone to failure,
18 BEHR Defendants continue to manufacture DeckOver Products for sale, and all
19 Defendants continue to market and sell the DeckOver Products to the public while
20 making false representations about DeckOver's quality, durability, and other
21 characteristics. As a result, Plaintiffs and Class members have borne substantial
22 removal and replacement costs and have experienced property damage to their
23 structures.

24    9.    This class action seeks compensatory and punitive damages,
25 injunctive and declaratory relief, and other relief as a result of Defendants'
26 violations of state consumer protection laws, breaches of warranties, and
27 violations of other laws.

28

**CLASS ACTION COMPLAINT**

# THE PARTIES

**Plaintiffs**

10.    Plaintiff William Elger ("Plaintiff Elger") is an adult residing in Saline, Michigan.

11.    Plaintiff Philip Ross ("Plaintiff Ross") is an adult residing in Clatskanie, Oregon.

### Defendants

12.    Defendants Behr Process Corporation and Behr Paint Corporation are corporations organized and existing under the laws of the State of California, with its corporate headquarters located at 3400 W. Segerstrom Ave., Santa Ana, California. Upon information and belief, Behr Process Corporation and Behr Paint Corporation are subsidiaries of MASCO Corporation and are manufacturers and suppliers of architectural paint, coatings, and exterior wood care products. The decisions, acts, and omissions alleged herein were conceived, implemented, and at all times carried out by Defendant Behr Process Corporation and Behr Paint Corporation, directly or in concert with their parent company MASCO Corporation, and/or The Home Depot.

13.    Defendant MASCO Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 21001 Van Born Road, Taylor, Michigan. Upon information and belief, MASCO Corporation is and was at all relevant times the parent company of Behr Process Corporation, and is one of the largest manufacturers and suppliers of architectural paint, coatings, and exterior wood care products in the United States.  MASCO Corporation is a multinational, publicly traded (NYSE: MAS) corporation comprised of more than twenty companies (including Behr Process Corporation) operating over sixty manufacturing facilities and over fifty warehouses and distribution locations in the United States and in many other parts of the world, including primarily China, Germany, and the United Kingdom.

**CLASS ACTION COMPLAINT**

According to its filings with the Securities and Exchange Commission, MASCO Corporation manufactures, distributes, and installs home improvement and building products, with an emphasis on brand-name consumer products and services.[4]

14.    Defendant The Home Depot, Inc., is a Delaware corporation with its principal place of business located at 2455 Paces Ferry Road, N.W., Atlanta, Georgia.  The Home Depot is perhaps the most well-known, and, in terms of overall reported revenue, the largest retailer of home improvement and construction products and services in the United States.  The Home Depot operates many big-box, warehouse style storefront locations in all fifty (50) United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, Guam, all ten provinces of Canada, and Mexico.  The Home Depot also maintains a website through which consumers can purchase The Home Depot's goods and services over the internet.  The Home Depot has the exclusive rights to sell BEHR products, including DeckOver Products, at The Home Depot store locations and through its website.

15.    Defendant Home Depot U.S.A., Inc. is a Delaware corporation, with its principal place of business in Georgia. Upon information and belief, Home Depot U.S.A., Inc. operates as a subsidiary of The Home Depot, Inc.

16.    Upon information and belief, MASCO Corporation oversees the work of Defendant Behr Process Corporation, and, in conjunction with Behr Process Corporation, designed, manufactured, and purposefully caused the DeckOver Products to be placed into the stream of commerce within this District and throughout the United States.  The decisions, acts, and omissions alleged herein were conceived, implemented, and at all times carried out by Defendant

---

[4] MASCO Corp. Form 10-K for the fiscal year ended Dec. 31, 2016, available at https://www.sec.gov/Archives/edgar/data/62996/000006299617000008/mas_2016 1231x10k.htm (last visited June 16, 2017).

**CLASS ACTION COMPLAINT**

MASCO Corporation, directly or in concert with its subsidiary Defendant Behr Process Corporation, and/or The Home Depot.

17.    BEHR Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the DeckOver Products.

18.    All Defendants used, commingled, and combined their resources to jointly advertise, market, and sell the DeckOver Products.

19.    At all times relevant herein, the BEHR Defendants were actual and/or *de facto* joint ventures in the design, development, manufacture, marketing, and sales of the DeckOver Products.

20.    At all times relevant herein, all Defendants were actual and/or *de facto* joint ventures in the marketing and sales of the DeckOver Products.

## JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00) and is a class action in which Plaintiffs are citizens of states different from Defendants.  Further, greater than two-thirds of the Class members reside in states other than the state in which Defendants are citizens.

22.    This Court has personal jurisdiction over Defendants because they are authorized to do business and are conducting business throughout the United States, including in California; they have specifically marketed and sold the DeckOver Products in the United States, including in California; they have sufficient minimum contacts with the various states of the United States, including California; and/or sufficiently avail themselves of the markets of the various states of the United States, including California, through their promotion, sales, and marketing within the United States, including in California, to render the exercise of jurisdiction by this Court permissible.

**CLASS ACTION COMPLAINT**

23.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this claim occurred in this District; Defendants regularly conduct and transact business in this District and are therefore subject to personal jurisdiction in this District; and Defendants have consented to venue in this District.

24.     Venue is also proper because: (a) Defendants are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution, and sale of the DeckOver Products in this District; (b) Defendants do substantial business in this District; and (c) Defendants are subject to personal jurisdiction in this District. Specifically, Defendants Behr Process Corporation is a California corporation with its principal place of business in this District.

25.     Furthermore, venue in this District is proper because the Standard Sales Terms and Conditions located on the BEHR Defendants' website require this action to be filed in this District.

## FACTUAL ALLEGATIONS

**A.     Overview of the DeckOver Products and Acrylic Residential Coatings**

26.     BEHR Defendants are leading manufacturers and sellers of architectural paint and exterior wood care products in the United States. As noted above, MASCO Corporation is the parent company of Behr Process Corporation and Behr Paint Corporation. BEHR Defendants' products include all DeckOver Products.

27.     MASCO identifies itself as an industry and world leader in, among other things, residential wood coatings:

> Masco Corporation is a global leader in the design, manufacture and distribution of branded home improvement and building products. Our portfolio of

8

industry-leading brands includes BEHR® paint; DELTA® and HANSGROHE® faucets, bath and shower fixtures; KRAFTMAID® and MERILLAT® cabinets; MILGARD® windows and doors; and HOT SPRING® spas.[5]

28.   Consumers who purchase DeckOver have contact, engage in transactions, and contract both with MASCO, Behr Process Corporation, and Behr Paint Corporation (in addition to The Home Depot, where the product is physically purchased). As seen below, DeckOver is branded by MASCO, Behr Process Corporation, and The Home Depot:

---

[5] MASCO Corp. Form 10-K for the fiscal year ended Dec. 31, 2016, available at https://www.sec.gov/Archives/edgar/data/62996/000006299617000008/mas_2016 1231x10k.htm (last visited June 16, 2017).

**CLASS ACTION COMPLAINT**



29.     As is known in the coatings industry, consumers purchasing wood and concrete coating products for their homes want products that will withstand harsh weather conditions but maintain their aesthetic appeal while lasting for a long time. With a large variety of wood and concrete surface coating products available in the market place, manufacturers must innovate to distinguish themselves from their competition.

30.     Outdoor wooden decks, docks, concrete patios, and similar structures typically require upkeep as they are exposed to the elements and to surface contact. Traditionally, that upkeep would have required application of a paint or stain about once a year and then eventual replacement of the structure entirely.

31.     In recent years, acrylic coatings have come to the market and homeowners have the option of applying these "resurfacers" – a thicker coating

**CLASS ACTION COMPLAINT**

than paint or stain that is supposed to last longer and extend the life of the surface by repairing splinters and filling cracks. Because resurfacers offer the promise of extending the life of the surface and avoid the hassle of traditional upkeep and/or the great expense and effort of completely replacing the structure altogether, they are substantially more expensive than regular paints and stains.

32. DeckOver is only one of the numerous brands of deck/surface resurfacer products currently on the market.

33. BEHR Defendants hold their products out as being innovative and of high quality. To distinguish itself in the marketplace, Defendants tout the DeckOver Products' durability and long-lasting, low maintenance qualities.

34. Defendants marketed their product as a better alternative to using traditional paints and stains, or to replacing worn and old decks, porches, patios and other structures altogether. Indeed, "DeckOver" conveys that it will "go over" decking and other surfaces, allowing consumers to do a "do-over" with their structure rather than total replacement. BEHR's advertising and other literature urges consumers thinking about replacing their decks to instead resurface using DeckOver, questioning "Why replace old wood if you don't have to?"[6] (image on following page):

---

[6] http://ebook-dl.com/magazine/handy-magazine-sharp-118-jun-jul-20136098.pdf, at p. 7 (last visited June 25, 2017).

**CLASS ACTION COMPLAINT**





35.    On the DeckOver FAQ page, BEHR Defendants emphasize why consumers should use DeckOver rather than traditional paints and stains[7]:

Why should I choose BEHR PREMIUM DeckOver Coating instead of a Solid Color Wood Stain?

BEHR PREMIUM DeckOver Coating is an innovative solid color coating that is designed specifically for old, weathered wood and concrete. BEHR PREMIUM DeckOver Coating offers advantages over solid color wood stain by having a 4 times thicker film that covers splinters and cracks up to 1/4" and creates a slightly textured, slip resistant finish.

36.    Furthermore, Defendants' advertising at Home Depot locations stresses that DeckOver is a much more affordable way to restore decks and other surfaces, rather than completely replacing them (image on following page):

---

[7]http://www.behr.com/binaries//content/assets/behrdotcom/web/pdfs/deckover_faqs.pdf (last visited June 23, 2017).

CLASS ACTION COMPLAINT



37.    In conjunction with the unveiling of DeckOver, in June 2013, Scott Richards, Senior Vice President of Marketing for Behr Process Corporation, publicly stated: "Using years of research and the latest technology, we have developed BEHR DECKOVER Solid Color Coating - a superior smooth finish resurfacing product."[8]  Mr. Richards extolled the DeckOver Products, claiming "BEHR DECKOVER provides easy application and durable protection against the elements, while refreshing the appearance of wood and concrete, allowing consumers to rejuvenate instead of replacing their decks or concrete surfaces."[9]

---

[8] http://coatings.specialchem.com/news/product-news/behr-unveils-behr-deckover-solid-color-coating-for-wood-and-concrete (last visited June 16, 2015).
[9] *Id.*

**CLASS ACTION COMPLAINT**

38.    DeckOver Products are available for purchase exclusively through The Home Depot, both at its storefront locations and through its website. An example of Home Depot's advertising for DeckOver (which adopts and largely reflects the advertising points used by BEHR Defendants) is below:



39.    Per The Home Depot's website, a one-gallon pale of DeckOver retails for $34.95 and purports to cover 75 square feet of surface area "in two coats."[10]

40.    Individuals with questions or concerns regarding DeckOver are specifically instructed on DeckOver product labels and other advertising to call BEHR Defendants or to visit BEHR Defendants' web pages at www.behr.com and www.behr.com/warranty.

---

[10] http://www.homedepot.com/p/BEHR-Premium-DeckOver-1-gal-Wood-and-Concrete-Coating-500001/206031374 (last visited June 16, 2015).

41.    All purchases of BEHR Defendants' products, including DeckOver, are governed by BEHR's Standard Sales Terms and Conditions, which can be on BEHR's website. *See* http://www.behr.com/consumer/standard-sales-terms-and-conditions (last visited June 23, 2017). This is readily available on the same BEHR website referenced on the DeckOver product labels.

**B.    Defendants Falsely Market and Advertise the Characteristics and Quality of DeckOver**

42.    DeckOver is marketed and advertised by all Defendants to offer a smooth, scratch/peel/chip-resistant finish that can withstand temperature and weather changes, heavy foot traffic, and as being generally durable.

43.    Pictures of Defendants' DeckOver Product labeling are below:



**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



44.     Per the product labeling, DeckOver purportedly consists of a "100%
acrylic formula" that "conceals splinters and cracks up to ¼", and "creates a
smooth, slip-resistant finish" that also "resists cracking and peeling."[11]

45.     DeckOver Products are heavily advertised to provide "long-lasting"
results.[12]

46.     One commercial for DeckOver claims DeckOver "gives life new life
to old wood and concrete" and represents that "more than a stain, [DeckOver]
extends the life of your deck, fills cracks, and covers splinters."[13]

---

[11] http://www.behr.com/consumer/products/wood-stains-finishes-cleaners-and-
strippers/behr-solid-color-deckover-stain (last visited June 16, 2017);
http://www.homedepot.com/p/BEHR-Premium-DeckOver-1-gal-Wood-and-
Concrete-Coating-500001/206031374 (last visited June 16, 2017).
[12] https://www.youtube.com/watch?v=OjHWwV6J7PU (last visited June 22,
2017).
[13] https://www.youtube.com/watch?v=RzQXqkuIUV0 (last visited June 22, 2017).

**CLASS ACTION COMPLAINT**

47.    That same commercial urges consumers "Don't replace. Resurface with Behr DeckOver . . . ."[14]

48.    On the labeling for DeckOver Products, Defendants represent that DeckOver "BRINGS NEW LIFE TO OLD WOOD & CONCRETE," "Creates a Smooth, Slip-Resistant Finish," and "Conceals Splinters & Cracks . . . ."

49.    DeckOver product labels all build on the same themes as Defendants' public statements and online advertising: that the DeckOver Products are low maintenance, high quality, and provide "lasting results."  Defendants specifically advertise that DeckOver Products resist cracking and peeling, and provide a "revolutionary"[15] remedy for worn and weathered concrete and decking or other wood surfaces.

50.    Defendants advertise that the DeckOver Products were long-lasting, reliable, and worry-free. Defendants' representations lead reasonable consumers to believe that the DeckOver Products are premier and superior products and Defendants have charged and continue to charge consumers premium prices for DeckOver Products upon these pretenses.

51.    Other areas on the product labeling (not pictured) further represent that DeckOver: "Resists Cracking & Peeling"; provides a "Durable, Mildew Resistant Finish"; that it can be used in "Waterproofing"; that it "Revives Wood & Composite Decks [and other surfaces]"; and is "Great for Concrete Pool Decks, Patios & Sidewalks."

52.    Advertising touting DeckOver's quality, durability, and longevity, in addition to being a better option than just replacing decks and other structures altogether, is also prominently displayed at Home Depot locations, as seen below:

---

[14] *Id.*

[15] http://newsroom.behr.com/news/introducing-new-behr-deckover-246353 (last visited June 26, 2017).

18

**CLASS ACTION COMPLAINT**

53.    When consumers purchase DeckOver at Home Depot locations, they are uniformly exposed to and see the above representations concerning DeckOver's characteristics, which is visible on all DeckOver labeling (and in other in-store advertising, such as that depicted above).

CLASS ACTION COMPLAINT

54.    When purchasing DeckOver through The Home Depot's website, consumers are also uniformly exposed to the same representations and advertising concerning DeckOver, as seen below[16]:



---

[16] http://www.homedepot.com/p/BEHR-Premium-DeckOver-1-gal-Wood-and-Concrete-Coating-500001/206031374 (last visited June 23, 2017).

CLASS ACTION COMPLAINT

## Product Overview

BEHR Premium DeckOver is an innovative new solid color coating that will bring your old, weathered wood or concrete back to life. The advanced 100% acrylic resin, fused with ceramic microspheres, creates a durable coating on your tired deck, rejuvenating its look. Spatter resistant formula makes application quick and easy. For the best results, be sure to properly prepare the surface using other applicable BEHR products displayed above.
California residents: see  Proposition 65 information ⚠

- Revives wood and composite decks, railings, porches and boat docks, also great for concrete pool decks, patios and sidewalks
- 100% acrylic solid color coating
- Resists cracking, peeling conceals splinters and cracks up to 1/4 in.
- Provides a durable, mildew resistant finish
- Covers up to 75 sq. ft. in 2-coats per gallon
- Creates a smooth, slip-resistant finish
- For best results, prepare with the appropriate BEHR product for your wood or concrete surface
- Colors available to be tinted in most stores
- Online Price includes a Paint Care fee in the following states: CA, CO, CT, DC, ME, MN, OR, RI and VT
- Product may vary by store

**Info & Guides**

FAQ

Installation Guide

Instructions / Assembly

SDS

Specification

TDS

Use and Care Manual

You will need Adobe® Acrobat® Reader to view PDF documents.  Download a free copy from the Adobe Web site.

55.     The purpose of Defendants' advertising and marketing of DeckOver Products, and dissemination of advertising materials regarding DeckOver products, *e.g.* long-lasting, revolutionary, crack- and peel- resistant, *etc.*, could only be to persuade consumers that DeckOver is durable, long-lasting, aesthetically pleasing upon application, and functional with the ability to act as a weather barrier for many years while making decks and other surfaces look like new.

56.     Defendants' guarantees, promises, and other representations about DeckOver Products induce customers into purchasing DeckOver Products and lead consumers to believe that the DeckOver Products are long-lasting and that Defendants stand behind their advertising and representations.

**CLASS ACTION COMPLAINT**

57.     However, DeckOver does not live up to these promises. Defendants' representations about the quality, durability, longevity, and other characteristics of DeckOver are instead false and materially misleading.

58.     Defendants are aware and have actual or constructive notice that the DeckOver Products are of inferior quality and susceptible to failure shortly after application, and that DeckOver does not, in fact, provide lasting results, even when applied properly in compliance with the product instructions.

59.     DeckOver Products routinely crack, chip, peel, bubble, and otherwise fail or degrade, and they do so in weather conditions that the products are advertised as capable of withstanding.

60.     Furthermore, despite Defendants' representations to the contrary, DeckOver does not successfully waterproof decks and other surfaces to which it is applied, as consumers routinely report that DeckOver does not seal their structures and permits moisture intrusion, often leading to mildew and degradation of the underlying structure.

61.     Defendants also market DeckOver Products as being barefoot friendly, and even aired a DeckOver commercial set to the song "Barefootin" by Robert Parker.  During the commercial, actors walk and dance on DeckOver-covered decks with ease and comfort.[17]

62.     As alleged herein, including in customer complaints below, DeckOver actually becomes so hot upon application to decks that "barefootin" is not possible without discomfort and pain to, or burning of, consumers' feet.

63.     Despite their knowledge that DeckOver is flawed, Defendants continue to market DeckOver as a top of the line product, while masking and failing to disclose its inferiority.

64.     Defendants knowingly and intentionally concealed and failed to disclose that – notwithstanding statements on their websites, brochures,

---

[17] https://www.youtube.com/watch?v=RzQXqkuIUV0 (last visited June 22, 2017).

**CLASS ACTION COMPLAINT**

advertisements, product labels, guarantees, and warranties – DeckOver often fails within months after proper application, which is inconsistent with the advertised "lasting results." Indeed, the fact that DeckOver deteriorates at such a fast rate and will continue to deteriorate quickly demonstrates a lack of durability and resiliency.

65. Defendants also made numerous material omissions in relevant advertisements and literature, and uniformly withheld important information relating to the design, reliability, and performance DeckOver.

66. Purchasers of DeckOver made and make purchasing decisions based upon the information presented by all Defendants, including on their websites, in marketing literature, advertisements, commercials, and warranties.

67. Defendants have had notice of the deficiencies described herein and have been routinely notified by customers that DeckOver does not functioning as advertised.

68. Defendants made each of the above described assertions, statements, representations, and warranties with the intent and purpose of inducing consumers to purchase apply DeckOver on structures throughout the United States. However, Defendants knew that these misrepresentations were not true and that DeckOver would not function as promised.

69. Had Defendants not withheld and omitted important information about the design, reliability, and performance of DeckOver, Plaintiffs and the members of the Class would not have purchased DeckOver, or would have paid considerably less for it than they did.

## C.    Internet Complaints About DeckOver Products

70. Plaintiffs' circumstances are not isolated incidents. Indeed, the internet is replete with consumer complaints about the low quality and premature failure of DeckOver. The following represents a small sampling of numerous

internet postings by disappointed and aggrieved DeckOver purchasers (all *sic*, emphasis added):

> Peeling after 8 mos

> Had Deckover applied to deck **about 8 months ago that was prepped PER SPEC by experienced trade person.** Went out a few weeks ago to blow off twigs, etc from deck and the **paint BLEW OFF THE Wood**.

> I have never seen anything like this. The paint peels off in huge segments **and the wood underneath is wet.** It appears that the paint actually SHRINKS on the surface of the wood producing cracks that wick the water in and cause the paint to separate from the wood. I now have a maintenance nightmare!!

> that **could cost many times what I spent** on this project.[18]

> ───────────────

> Review about Behr Deckover Paint from Ponte Vedra Beach, Florida

> I **followed all of the instructions** and repainted our entire deck with Behr Deckover. **One Michigan winter later, it is chipping and peeling so badly that it will**

───────────────

[18] Posted at http://behr-paint.pissedconsumer.com/peeling-after-8-mos-20150408619468.html by "anonymous" on April 8, 2015.

CLASS ACTION COMPLAINT

**need repainted this summer again**. It is a waste of money and a waste of time![19]

---

Behr Deck Over is flaking

I am a newcomer. Last summer we bought a house and I painted my deck with Behr Deck Over. I had no experience in paints for decks and saw a booklet in Home Depot. I had some *** idea that market here is decent enough to prevent deceiving customers. I was wrong.

What I see know. **Very bad adhesion. The paint is peeling off easily**. I noticed in winter, when I secured Christmas lights along rails with insulation tape, paint was peeling off while removing the tape.

I am thinking what I can do now. Me and my wife **worked hard to paint every rail post**. And I feel deceived.

Please do not buy that product.[20]

---

[19] Posted at http://behr-paint.pissedconsumer.com/review-about-behr-deckover-paint-from-ponte-vedra-beach-florida-20150405618136.html by "anonymous" on April 5, 2015 (last visited June 16, 2017).
[20] Posted at http://behr-paint.pissedconsumer.com/behr-deck-over-is-flaking-20150331615697.html by "anonymous" on March 31, 2015 (last visited June 16, 2017).

**CLASS ACTION COMPLAINT**

Deckover is junk

About three months ago I notified Behr what was happening to my deck **after one season after painting it with DeckOver.It chipped, pealed ,cracked and faded.**

I sent a letter and an representative called me. They said to send pictures and a picture of one of the buckets I had not thrown away and they would try to resolve my problem. **I did as they asked and that was the last I heard from them.** Deckover is not a good product.

Most of the reviews say the same. Don't waste your money as Behr does not stand behind their product.[21]

Not Worth the Money

I bought Behr Deck over because I was **impressed with their ad** and was **tired of repainting my deck every 2-3 years**. I **hired a professional painter** who specializes in decks and log siding. He **followed all the procedures**

---

[21] Posted at http://behr-paint.pissedconsumer.com/deckover-is-junk-20141029552119.html by "safestart1936" on October 29, 2014 (last visited June 16, 2017).

**CLASS ACTION COMPLAINT**

for prepping the deck. After **less than one year deck over has peeled on almost every board.**

**I contacted Behr and they said a representative would contact me. That was over 6 months ago**. My conclusion:

- Behr does not honor their warranty
- Behr is not interested in customer satisfaction
- Behr Deck over is not worth the money. I would have been better off buying a cheaper paint.
- Good bye Behr[22]

---

Behr DeckOver – Dog Owners Beware!!!!

After **following the manufacturers' instructions to the letter,** I applied the Behr DeckOver to my deck, which is a pretty decent sized deck.It was done in the color "Flat Top", which is a dark gray.

It kind of filled the cracks and holes, but that is not my main complaint. **I waited two days** before walking on the surface, and did not allow my 50 pound dog on the deck until that time as well. **Not only is the surface**

---

[22] Posted at http://behr-paint.pissedconsumer.com/not-worth-the-money-20141017547653.html by "anonymous" on October 17, 2014 (last visited June 16, 2017).

**CLASS ACTION COMPLAINT**

**now terribly hot, it is stained with paw prints from
my dog getting into dirt/mud. I sprayed the surface
off immediately with the hose, but the prints
remained**.

After getting on my hands and knees with a scrub brush
and bucket of soapy warm water, they still remain.
Needless to say, after all of that work, I am extremely
unhappy. I was trying to figure out why, on some days,
my dog won't go out onto the deck. It's because now it's
too *** hot and probably burns his feet.

**I know it burned mine when I was "barefootin'" on
it**. So now I have a dark gray deck stained with brown
paw prints. I'm considering painting over that with an
exterior paint to cover them up **because it looks so
crappy**.

After **spending nearly $150 and expending the time
and energy to improve our deck, it looks worse than
ever**.[23]

---

Peeling and fading

---

[23] Posted at http://behr-paint.pissedconsumer.com/behr-deckover-dog-owners-
beware-20140911532806.html by "msilver1960" on September 11, 2014 (last
visited June 16, 2017).

**CLASS ACTION COMPLAINT**

Bought few cans of this high dollar deck over paint, **within three months began peeling and fading, been eight months now, all completely faded and peeling everywhere.** Very disappointed.

**Commercials and pictures lured me to buy it.** Don't have much money, can't afford to pay @40 dollars a can, had to buy six.

Now I will have to redo deck soon, looks like been on the deck about ten to fifteen years, **only been months**, feel ripped off...Will not buy behr paint ever again, if given any, I would not use, looked good for about month, then yuke old looking[24]

We are happy with Home Depot 99% of the time shopping there. In this case alone, especially because it is Behr (Home Depot) paint, we have to give such a low rating. **We spent so much money and time using a product that turned out to be an utter disaster**. Home Depot should have tested this product thoroughly before putting homeowners through this kind of nightmare.[25]

---

[24] Posted at http://behr-paint.pissedconsumer.com/peeling-and-fading-20150329614813.html by "Bigcat2003" on March 29, 2015 (last visited June 16, 2017).
[25] Posted at http://www.homedepot.com/p/BEHR-Premium-DeckOver-1-gal-Wood-and-Concrete-Paint-

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

<u>DO NOT PURCHASE THIS PRODUCT</u>

I am sooo unhappy with this product that I will never buy a Behr product again- and I am a loyal Home Depot shopper and former employee. I purchased the DeckOver product and **have had it on for less than a year and it has peeled and chipped off all over my deck in spots larger than 11" square**. I expected some fading and a little wear but nothing like this! I **followed all the instructions by the book including using the Behr Stripper and Deck Wash.** I would have thought this was a fluke thing and maybe a product error until the **same thing happened to my sister's not four months after she put hers on**! I have completely lost faith in any claim Behr makes and will never buy their products again.[26]

---

<u>STAY AWAY WILL PEEL OFF AFTER ONE WINTER</u>

**i did all prep by the book just as told..this took a three week process of cleaning stripping cleaning**

---

500005/203545967?N=5yc1vZc7gvZc4x#customer_reviews, Customer Reviews, by "WhiteMountainBuild" on May 1, 2014 (last visited June 16, 2017).

[26] Posted at *id.* by "erin" on April 2, 2015(last visited June 16, 2017).

**CLASS ACTION COMPLAINT**

**treating drying painting then drying and only 8 months later deck is peeling badly**. i did two decks and both are peeling they look worse than before i put deck over on.i wish i waited for more reviews before i did mine i never would have taken the chance if i knew. i hold BEHR completley responsible! what? did they not try this product out before they put it out on the market? WORST PRODUCT EVER.STAY AWAY[27]



TABBY0822
Female

**just terrible**

1.0
out of 5

★☆☆☆☆

June 6, 2017

Customer review from Behr.com    BEHR

we had a new deck put on and we used this deck over, it did not even las a year my paint is peeling up everywhere. This product should be taken off the shelves. I wish I could get my money back. We used 2- 5 gal buckets. DONOT USE WASTE OF MONEY



GreenvilleMatt
Male

**Sad. Terrible product**

1.0
out of 5

★☆☆☆☆

June 2, 2017

Customer review from Behr.com    BEHR

I pressure washed my deck, let dry for a week (no rain), and applied the product as instructed. 7 months later it's peeling up and I have to replace my deck boards. I'm pretty upset that this product has made my life more difficult and expensive. Unfortunately it looks like I'm not alone. Many other reviews like mine!



Gerry Mc Gowan
Yesterday at 1:28am ·

I would like to tell everyone on facebook if you are THINKING of using Behr deckover to try to but life in your deck PLEASE PLEASE DO NOT USE THIS CRAP .It will start peeling after one year and also cause you wood to crack .I am now having major problems with my deck i had to replace some of my decking boards because of bad cracks and water rot .The water gets under deckover and rots theif you do not believe you can stop by and look at my deck this just a warning a Thank you Gerry Mc Gowan

boards

3                    4 Comments

👍 Like          💬 Comment          ↪ Share

---

[27] Posted at *id.* by "BOFO" on May 26, 2014 (last visited June 16, 2017).
[28] http://www.homedepot.com/p/BEHR-Premium-DeckOver-1-gal-SC-104-Cordovan-Brown-Wood-and-Concrete-Coating-500001/204226877 (last visited June 16, 2017).
[29] *Id.* (last visited June 16, 2017).

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8  31
9
10
11
12
13
14
15
16
17
18
19
20  32
21
22



[30]https://www.facebook.com/gerry.mcgowan1/posts/10211830636460056?match=YmVociBkZWNrb3Zlcg%3D%3D (last visited June 16, 2017).

[31]https://www.facebook.com/msilbermanbeck/posts/10213753986471871?match=YmVociBkZWNrb3Zlcg%3D%3D (last visited June 16, 2017).

[32]https://www.facebook.com/photo.php?fbid=10210902944321957&set=a.1143152111324.2022433.1603122367&type=3 (last visited June 16, 2017).

23
24
25
26
27
28

CLASS ACTION COMPLAINT

71.    Below are a few pictures from the internet taken by angry consumers who applied DeckOver to their decks or other structures, which have been ruined or left in disrepair by the product:



33

---

[33] https://behr.pissedconsumer.com/ (last visited June 22, 2017).

**CLASS ACTION COMPLAINT**



34



35

---

[34] *Id.*
[35] *Id.*

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12



36

13
14
15
16
17
18
19
20
21
22
23
24
25
26



37

27

[36] http://www.cbc.ca/news/canada/nova-scotia/behr-deckover-paint-consumer-
complaints-canada-nova-scotia-1.3591563 (last visited June 22, 2017).

28

[37] https://cassiar2.files.wordpress.com/2014/05/41.jpg (last visited June 23, 2017).

**CLASS ACTION COMPLAINT**

**D.**     **Plaintiffs' Experiences With DeckOver**

**Plaintiff William Elger**

72.     In or about autumn of 2015, Plaintiff Elger purchased 2-3 gallons of DeckOver from a Home Depot store. He applied the DeckOver to his wood deck at his home in Michigan. Prior to purchasing DeckOver, Plaintiff Elger was deciding between building a new deck altogether and doing a restoration project on his deck using a revitalizing or restorative coating product like DeckOver. Plaintiff Elger specifically chose to do a restoration project and to use DeckOver because he saw advertisements and commercials both on television and at The Home Depot identifying that homeowners can seal cracks in deck boards by using DeckOver, including cracks as large as ¼". He also saw advertising stating that DeckOver would make your old or worn deck look "new." These commercials depicted decks that were supposedly treated with DeckOver and which appeared to look brand new. Plaintiff Elger was particularly drawn to DeckOver's purported qualities to make decks look new, to fill cracks in deck boards, and to provide long-lasting results.

73.     Plaintiff Elger also saw the specific representations regarding DeckOver's qualities and characteristics on the DeckOver product containers he purchased, and he relied upon these representations in purchasing DeckOver.

74.     Prior to applying DeckOver, Plaintiff Elger prepared his deck according to the product instructions. He cleaned his deck using a BEHR-brand deck cleaning product and he scrubbed the deck. Plaintiff then applied DeckOver according to the instructions. When Plaintiff applied the DeckOver coating, despite the representations about filling ¼" cracks, he noticed that the DeckOver did not even fill the cracks on his deck that were smaller than that. Plaintiff Elger spent approximately a week redoing his deck with DeckOver, including time spent preparing the deck and actually applying DeckOver.

**CLASS ACTION COMPLAINT**

75.   Plaintiff traveled to his home in Arizona for the winter of 2015. When he returned to Michigan in approximately April 2016, his deck appeared to be in good shape. But as the summer months hit, the DeckOver on Plaintiff's deck started bubbling, cracking, peeling, and lifting up from Plaintiff's deck. Plaintiff's deck became unsightly and was in a state of disrepair due to the DeckOver failing.

76.   In or about July 2016, Plaintiff called BEHR's customer service number to complain about the product failure. Defendants simply sent Plaintiff more flawed DeckOver and additional BEHR-brand deck cleaner.

77.   Plaintiff Elger undertook to repair his deck himself. He sanded down and cleaned the spots where the DeckOver was peeling, cleaned the entire deck, and then reapplied DeckOver to the entire deck. This process required three more days of labor by Plaintiff.

78.   To date, Plaintiff's deck remains in a state of disrepair, as the DeckOver still cracks, chips, and bubbles in various spots on his deck. The replacement DeckOver did not remedy or repair Plaintiff's deck.

79.   Despite spending an inordinate amount of time properly preparing his deck, applying DeckOver, attempting to remove the failed DeckOver Product, and reapplying new DeckOver, Plaintiff will likely replace his deck altogether.

80.   As noted above, Plaintiff Elger saw and relied on advertising touting the quality of DeckOver and its supposed long-lasting, crack-filling, and restorative properties in deciding to purchase DeckOver Products. Had he known that the DeckOver was not long-lasting, would not fill in the cracks on his deck, would not make his deck look like new as advertised, and that DeckOver is not a quality product suitable for application to his deck, he would not have purchased DeckOver.

81.   As a result of purchasing and applying DeckOver to his deck, Plaintiff Elger has suffered harm, including out of pocket expenses and unreimbursed labor.

CLASS ACTION COMPLAINT

**Plaintiff Philip Ross**

82.    Plaintiff Ross owns a deck that is nearly 1,000 square feet. In 2014, Plaintiff Ross decided to resurface his deck using DeckOver. Plaintiff Ross paid full price for approximately 25 gallons of DeckOver, which he purchased at Home Depot with his credit card.

83.    Plaintiff saw numerous television advertisements for DeckOver on his television because, as it was a new product at the time, it was extensively advertised on television. Plaintiff Ross considered other similar deck resurfacing product lines by other manufacturers but he decided to use DeckOver because of the fact that the product was backed and co-marketed by Home Depot, which Plaintiff believed (at the time) was a company with a great reputation.

84.    At the time he purchased DeckOver at Home Depot, Plaintiff Ross reviewed the DeckOver product label and understood DeckOver to be a long-lasting, quality product. He also saw and relied upon in-store advertising (*i.e.*, signage) advertising the same qualities as seen on the product can. Plaintiff Ross relied on these representations in deciding to purchase DeckOver.

85.    Prior to purchase, Plaintiff carefully read the instructions for applying DeckOver and he asked multiple questions of the paint department employees at Home Depot to ensure that he was buying a quality product. Plaintiff Ross was assured by Home Depot employees that if he applied DeckOver properly, the coating would maintain in good condition for at least seven years, after which an occasional recoating would need to be applied.

86.    Before applying DeckOver in or about July and August of 2014, Plaintiff prepared and cleaned his deck in accordance with the DeckOver instructions, including pressure washing his deck for approximately 10 hours to remove any dirt and debris. He then waited for the deck to dry to ensure no moisture would be trapped below the new coating.

**CLASS ACTION COMPLAINT**

87.     Both the instructions and Home Depot personnel stated that two coats should be applied using a roller and/or a brush, which Plaintiff did. Out of abundance of caution, Plaintiff applied five coats, which took approximately three weeks. Plaintiff Ross coated all of the decking, hand rails, vertical supports, and balusters. Altogether, Plaintiff spent approximately 100 hours preparing his deck and applying DeckOver.

88.     During the summer of 2015, approximately eleven months after applying DeckOver, small cracks began to develop all over Plaintiff's deck. Plaintiff contacted Home Depot and was told that this was normal, and to simply add a little more product to the cracked areas. Plaintiff bought and applied three more gallons of DeckOver to cover the cracks.

89.     During the summer of 2016 large cracks began to appear everywhere. Plaintiff again contacted Home Depot about this and was told employees were not allowed to discuss product failures.

90.     Most recently, in June 2017, the DeckOver has begun peeling everywhere on Plaintiff's deck and DeckOver has resulted in Plaintiff's deck board rotting and warping. Specifically, and despite claims by Defendants that DeckOver is able to waterproof decks, the DeckOver allowed moisture intrusion under the coating and destroyed the wood on Plaintiff's deck.

91.     The DeckOver coating never properly adhered to the wood on Plaintiff's deck.  When Plaintiff attempted to contact Behr Process Corporation, they hung up on him.

92.     Due to the DeckOver failure, Plaintiff's deck needed to be replaced. Specifically, all deck boards, upright supports for the railings, railings, and balusters were replaced. The deck replacement has cost Plaintiff approximately $10,000 to date and the project is still not completed. Additionally, the labor expense for the deck replacement will likely be in excess of $2,000.

**CLASS ACTION COMPLAINT**

93.    Due to the poor quality and failure of DeckOver, Plaintiff's deck was left in an unsightly state of disrepair, requiring total replacement. Furthermore, his deck had become unsafe due to the DeckOver jeopardizing the structural integrity of the deck.

94.    Despite spending an inordinate amount of time properly preparing his deck, applying DeckOver, and reapplying new DeckOver, Plaintiff Ross' deck rotted and warped, and was ruined by DeckOver.

95.    As noted above, Plaintiff Ross saw and relied on advertising touting the quality of DeckOver and its supposed long-lasting, durability, and restorative properties in deciding to purchase DeckOver. He also saw and relied upon the advertising and product descriptions located on the DeckOver product label and on in-store advertising at the Home Depot in making his decision to purchase DeckOver. Had he known that DeckOver was not long-lasting, would not make his deck look like new as advertised, would destroy his deck, and that DeckOver is not a quality product suitable for application to his deck, Plaintiff Ross would not have purchased DeckOver.

96.    As a result of purchasing and applying DeckOver to his deck, Plaintiff Ross has suffered harm, including out of pocket expenses and unreimbursed labor.

97.    Each of the Plaintiffs purchased DeckOver Products that are defectively designed and manufactured, and prematurely failed.

98.    Plaintiffs and members of the Class have been injured as a result of Defendants' deceptive and fraudulent practices, including but not limited to false and misleading advertising and marketing, and as a result of BEHR Defendants' breaches of warranties.

99.    Additionally, as a result of the defective quality of the DeckOver Products, Plaintiffs and members of the Class have suffered damage to the underlying structures of their homes where the DeckOver Products were applied,

CLASS ACTION COMPLAINT

and the values of the affected homes have thus been diminished.  While these customers are forced to repair and/or replace their damaged property and the DeckOver, they are not reimbursed for the costs associated with these expenses, including labor costs.

100.  Instead, when consumers call Defendants to complain, they frequently make no progress, and the BEHR Defendants often do not call back or follow up with aggrieved consumers. When they do, it is typically to offer additional identical DeckOver product that is equally flawed and which also fails.

101.  The experiences and complaints of Plaintiffs and other Class members show that Defendants were well aware of customer complaints and experiences concerning DeckOver's premature failure. Despite this knowledge, BEHR Defendants have failed to implement any changes to remedy the defects associated with DeckOver and all Defendants have failed to change or address the way in which DeckOver is marketed and sold to consumers.

## TOLLING OF APPLICABLE STATUTE OF LIMITATIONS

102.  Plaintiffs and members of the Class are within the applicable statute of limitations for the claims presented here. Defendants have non-public information detailing the propensity of DeckOver to prematurely degrade, but failed to disclose this information to consumers, and Plaintiffs and Class members therefore could not reasonably have known that DeckOver prematurely fail. Rather, consumers relied upon Defendants' misrepresentations and omissions, including the statements on the product labeling as set forth above.

103.  Once Plaintiffs incurred damages, they promptly acted to preserve their rights, filing this action. Defendants are estopped from asserting any statute of limitation defense that might otherwise be applicable to the claims asserted herein based upon the discovery rule and due to Defendants' active concealment of the fact that DeckOver prematurely degrades and fails.

## CHOICE OF LAW ALLEGATIONS

**CLASS ACTION COMPLAINT**

104.   BEHR's "Standard Sales Terms and Conditions" ("T&C"), available on BEHR Defendants' website, state that they "exclusively govern the sale of [BEHR] products" to consumers.[38] Purchases of DeckOver are therefore subject to BEHR's T&C.

105.   Pursuant to Section 16 of the T&C, pertaining to "Governing Law and Forum", all transactions for purchase of BEHR products, including DeckOver, are "construed and interpreted, and the rights of the parties determined, in accordance with the laws of the State of **California** without regard to any conflict of laws provisions that might otherwise apply."[39]

106.   Accordingly, California law is applicable to the claims of Plaintiffs and Class members.

107.   Furthermore, and irrespective that California law applies to the claims herein under the T&C, the state of California has ample contacts to the conduct alleged herein such that California law may be uniformly applied to the claims of the proposed Nationwide Class against Defendants.

108.   BEHR Defendants' conduct substantial business in California. According to its website, The Home Depot – where BEHR products are exclusively sold – maintains 234 locations in California.

109.   Behr Process Corporation is headquartered in California, and the BEHR Defendants' promotional activities arise from conduct in the state of California. Furthermore, a significant portion of the proposed Nationwide Class is located or resides in California. The conduct that forms the basis for each and every Class member's claims against Defendants emanated from BEHR Defendants' headquarters in Santa Ana, California. BEHR's marketing executives are likewise based in California.

---

[38] http://www.behr.com/consumer/standard-sales-terms-and-conditions (last visited June 23, 2017).
[39] *Id*. (emphasis in original).

**CLASS ACTION COMPLAINT**

110.   The state of California also has the greatest interest in applying its law to Class members' claims. Its governmental interests include not only an interest in compensating resident consumers under its consumer protection laws, but also a compelling interest in using its laws to regulate resident corporations to preserve a business climate free of fraud and deceptive practices.

## CLASS ACTION ALLEGATIONS

111.   Plaintiffs bring this lawsuit under Federal Rule of Civil Procedure 23, on behalf of themselves and all others similarly situated.

112.   Plaintiffs seek to represent the following Nationwide Class (applying the law of California):

> All individuals and entities in the territories of the United States that have purchased, not for resale, BEHR DeckOver®.

113.   In the alternative, Plaintiffs seek to represent the following state sub-classes:

> **Michigan Class**
> All individuals and entities in Michigan that have purchased, not for resale, BEHR DeckOver®.

> **Oregon Class**
> All individuals and entities in Oregon that have purchased, not for resale, BEHR DeckOver®.

114.   The above defined Nationwide Class and state sub-classes are collectively referred to as the "Class." Plaintiffs reserve the right to re-define the Class prior to class certification.

115.   Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in

Defendants, and Defendants' legal representatives, assigns and successors.  Also excluded are the judge(s) to whom this case is assigned and any member of the judge's immediate family.

116.  Class members seek relief under both Rule 23(b)(2) and (b)(3). Specifically, Class members who need to replace decking or patio material and/or repair decks and patios and other surfaces or property seek to have the Court declare any limits on full recovery by the class members to be unenforceable and otherwise null and void. This relief is based solely upon Defendants' past and current systematic practices and policy of limiting remedies of the Class members, and thus declaratory relief is thus appropriate for the Class as whole. Under Rule 23(b)(3), the central issues for each and every Class member are the same: whether DeckOver has the propensity to prematurely fail, whether Defendants acted unlawfully and deceitfully, and whether the Class is entitled to common remedies.

117.  <u>Numerosity</u>: The number of persons who are members of the Class is so numerous that joinder of all members in one action is impracticable. The exact number of Class members is unknown. Due to the nature of the trade and commerce involved, as well as the number of complaints by consumers about the problems alleged herein, Plaintiffs believe the Class consists of thousands of consumers.

118.  <u>Predominance</u>: Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendants complained of herein were generally applicable to the entire Class. These legal and factual questions include, but are not limited to:

> a) whether Defendants marketed DeckOver as a superior, long-lasting alternative to painting, staining, or rebuilding decks, patios, and other surfaces, capable of extending the life of the surfaces to which it was applied;

**CLASS ACTION COMPLAINT**

b) whether Defendants' marketing of DeckOver was false, deceptive, and/or misleading to reasonable consumers;

c) whether DeckOver is unfit for its ordinary purpose of providing lasting protection to deck and patio surfaces and related structures;

d) whether DeckOver is unfit for its particular purpose of providing protection to deck and patio surfaces from harsh weather conditions and lasting longer than ordinary deck paints or stains;

e) whether the DeckOver Products are defective and susceptible to premature failure;

f) whether Defendants knew or should have known of the defective nature of the DeckOver Products;

g) when Defendants discovered that DeckOver is susceptible to premature failure;

h) whether Defendants ever disclosed knowledge that DeckOver is susceptible to premature failure;

i) whether DeckOver's propensity of premature failure would be important to a reasonable consumer;

45

j) whether the DeckOver Products failed to perform as warranted by Defendants;

k) whether Defendants breached express and implied warranties;

l) whether Defendants were unjustly enriched by the sale of DeckOver Products;

m) whether the limitations and terms in Defendants' warranties and terms and conditions are unconscionable and unenforceable;

n) whether, and to what extent, Plaintiffs and the Class suffered damages as a result of Defendants' conduct; and

o) whether Defendants should be declared financially responsible for notifying all Class members about DeckOver's propensity to prematurely fail and for all damages associated with application of the product on Class members' decks, patios, and similar property/structures.

119. <u>Commonality</u>:  All questions as to the representations and publicly disseminated advertisements and statements attributable to Defendants at issue herein are similarly common. A determination of Defendants' knowledge regarding the misleading and deceptive nature of the statements made and alleged herein on websites, brochures, advertisements, commercials, product labels, and warranties will be applicable to all members of the Class. Further, whether Defendants violated any applicable state laws and pursued the course of conduct complained of herein, whether Defendants acted intentionally or recklessly in

**CLASS ACTION COMPLAINT**

engaging in the conduct described herein, and the extent of the appropriate measure of injunctive and declaratory relief, damages, and restitutionary relief are common questions to the Class.

120. <u>Typicality</u>:  Plaintiffs' claims are typical of the members of the Class. Plaintiffs purchased defective DeckOver Products and the DeckOver Products malfunctioned, failed, or otherwise proved defective.  Plaintiffs, like all members of the Class, have suffered damages associated with the use of defective DeckOver Products, including not only the premature failure of the DeckOver Products themselves, but also damage to the underlying structures to which DeckOver is applied.

121. <u>Adequacy of Representation</u>: Plaintiffs will fully and adequately represent and protect the interests of the Class because of the common injuries and interests of the members of the Class and the singular conduct of Defendants that is or was applicable to all members of the Class.  Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those of the Class they seek to represent.

122. <u>Superiority</u>:  A class action is superior to all other available methods for fair and efficient adjudication of this controversy.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards of conduct for Defendants under the laws alleged herein.

123. The claims of the Class may be certified under Rule 23(b)(1), (b)(2) and/or (b)(3).  The members of the Class seek declaratory and injunctive relief but also seek sizeable monetary relief.

# CAUSES OF ACTION

## COUNT I

**Violation of the California Unfair Competition Law**

**CAL. BUS. & PROF. CODE §§ 17200, *et seq.* ("UCL")**

**Against Defendants**

**(On Behalf of the Nationwide Class)**

124.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

125.   Defendants have violated and continue to violate California's UCL, which prohibits unlawful, unfair, and fraudulent business acts or practices.

126.   Defendants' acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the UCL. In particular, Defendants marketed, distributed, advertised, and sold DeckOver even though DeckOver is not a durable deck/patio resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces. Instead, DeckOver is prone to promptly peeling, chipping, bubbling, degrading, and otherwise failing shortly after application, and despite proper surface preparation and application. Defendants failed to disclose material facts concerning DeckOver's performance at the point of sale and otherwise, despite touting and advertising DeckOver as a high-quality, durable product.

127.   Defendants' business acts and practices are unlawful in that they violate the California Consumers Legal Remedies Act, CAL. CIV. CODE §§ 1750, *et seq.*, for the reasons set forth in this complaint.

128.   Defendants' acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, the Defendants knowingly misrepresent(ed) and conceal(ed) material facts related to DeckOver's performance. Had the Defendants not misrepresented and concealed

these facts, Plaintiffs, class members, and reasonable consumers would not have purchased DeckOver or would have paid significantly less for it.

129.   The Defendants' conduct also constitutes unfair business practices for at least the following reasons:

> a. The gravity of harm to Plaintiffs and the proposed Class from the Defendants' acts and practices far outweighs any legitimate utility of that conduct;

> b. Defendants' conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the members of the proposed Nationwide Class; and

> c. Defendants' conduct undermines and violates the stated policies underlying the Consumers Legal Remedies Act—to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

130.   As a direct and proximate result of the Defendants' business practices, Plaintiffs and proposed Class members suffered injury in fact and lost money or property, because they purchased and paid for products that they otherwise would not have, or in the alternative, would have paid less for. Plaintiffs and the proposed Nationwide Class are entitled to an injunction and other equitable relief, including restitutionary disgorgement of all profits accruing to Defendants, because of their unfair and deceptive practices, and such other orders as may be necessary to prevent the future use of these practices.

## <u>COUNT II</u>

**Violation of the California Consumers Legal Remedies Act**

**CLASS ACTION COMPLAINT**

## CAL. CIV. CODE §§ 1750, *et seq.* ("CLRA")

### Against Defendants

### (On Behalf of the Nationwide Class)

131.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

132.   The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale of goods or services to any consumer."

133.   Defendants are "persons" within the meaning of the CLRA. CAL. CIV. CODE §§ 1761(c).

134.   DeckOver is a "good" within the meaning of the CLRA. CAL. CIV. CODE §§ 1761(a).

135.   Plaintiffs and members of the Class are "consumers" within the meaning of the CLRA. CAL. CIV. CODE §§ 1761(d).

136.   As alleged herein, Defendants made numerous representations concerning the benefits, performance, qualities, and quality of DeckOver that were misleading. In purchasing DeckOver, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that DeckOver is prone to premature degradation and failure, despite proper preparation of and application to decks, patios, porches, and other wood and concrete surfaces.

137.   Defendants' conduct, as described herein, was and is in violation of the CLRA.  Defendants' conduct violates at least the following enumerated CLRA provisions:

       a.   § 1770(a)(5): Representing that goods have characteristics, uses, benefits, or quantities which they do not have;

b.   § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

c.   § 1770(a)(14): Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve; and

d.   § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

138.   As described herein, the Defendants manufactured, distributed, marketed, and advertised DeckOver for sale to Class members while misrepresenting and concealing material facts about DeckOver, including representing that is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to premature degradation, including peeling, chipping, bubbling, and otherwise failing soon after application.

139.   Plaintiffs and the other Class members have suffered injury in fact and actual damages resulting from Defendants' material omissions and misrepresentations because, *inter alia*, they lost money when they purchased DeckOver or paid an inflated purchase price for DeckOver, have paid out of pocket for repairing or replacing their decks, have had their decks and other structures damaged and/or devalued, and have expended countless hours of uncompensated labor attempting to remedy damaged decks and/or failed DeckOver applications.

140.   Defendants knew, should have known, or were reckless in not knowing that DeckOver was and is prone to premature failure, rendering it unsuitable for its intended use.

51

**CLASS ACTION COMPLAINT**

141. Defendants had a duty to disclose that DeckOver is prone to premature failure because Defendants had exclusive knowledge of this prior to making sales of DeckOver and because Defendants made partial representations about the quality of DeckOver, but failed to fully disclose the truth about DeckOver.

142. The facts concealed and omitted by Defendants to Plaintiffs and the other Class members – namely that DeckOver is flawed and fails prematurely – are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase DeckOver or pay a lower price for it. Had Defendants been truthful about premature failure in DeckOver, Plaintiffs, members of the proposed Class, and reasonable consumers would not have purchased or would have paid less for DeckOver.

143. This cause of action seeks injunctive relief at this time. However, Plaintiffs Elger and Ross are sending a demand letter to each Defendant *via* certified mail pursuant to the requirements of the CLRA providing the notice required by CAL. CIV. CODE § 1782(a). If Defendants do not correct or otherwise rectify the harm alleged by Plaintiffs in their letter or this Complaint within the statutorily proscribed 30-day period, Plaintiffs will amend this Complaint to seek monetary damages against Defendants pursuant to CAL. CIV. CODE §§ 1781 and 1782.

144. Plaintiff further seeks an order awarding costs of court and attorneys' fees under CAL. CIV. CODE § 1780(e).

## COUNT III

### VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW

### Cal. Bus. & Prof. Code § 17200, *et. seq.* ("FAL")

### Against All Defendants

### (On Behalf of the Nationwide Class)

CLASS ACTION COMPLAINT

145.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

146.    The FAL provides, in pertinent part:

> "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

CAL. BUS. & PROF. CODE § 17500.

147.    Defendants violated the FAL by using false and misleading statements, and material omissions to advertise and sell DeckOver. Defendants promoted false and misleading statements and representations through advertising, marketing, and other publications. Defendants knew, or through the exercise of reasonable care should have known, that their statements and material omissions were untrue and misleading to Plaintiffs and Class members.

148.    Defendants' misrepresentations and omissions regarding the performance, quality, reliability, and other characteristics of DeckOver as set forth herein were material and likely to deceive (and did deceive) reasonable consumers.

149.   Plaintiffs and Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' material misstatements and omissions. In purchasing DeckOver, Plaintiffs and Class members relied on the false advertising, misrepresentations, and/or omissions of Defendants alleged herein.

150.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still being perpetuated and repeated nationwide.

151.   Plaintiffs, individually and on behalf of the Class, request that this Court enter such orders or judgments as may be necessary to prohibit Defendants from continuing their pattern of using misleading statements and omissions and to restore to Plaintiffs and Class members' the money Defendants acquired through such statements and omissions, including restitution or restitutionary disgorgement, and for such other relief set forth below.

## COUNT IV
### FRAUD
**Against All Defendants**
**(On Behalf of the Nationwide Class, or in the**
**Alternative, the Michigan and Oregon Classes)**

152.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

153.   Plaintiffs bring this claim under California law on behalf of the Nationwide Class.  In the alternative, this claim is pled by Plaintiffs on behalf of the Michigan and Oregon Classes under the laws of those states.

154.   Defendants misrepresented and concealed or suppressed material facts concerning the performance and quality of DeckOver Defendants' brands.

Specifically, Defendants knew (or should have known) that DeckOver is prone to premature failure despite proper use and application, but failed to disclose this prior to or at the time they sold DeckOver to consumers. Defendants did so in order to boost sales of DeckOver and profits in general.



155. Plaintiffs and Class members had no way of knowing that Defendants' representations were false and gravely misleading, or that Defendants had omitted imperative details. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.

156. Defendants had a duty to disclose the true performance of DeckOver because knowledge of its premature failure and the details related thereto were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiffs and the Class. Defendants also had a duty to disclose because they made many general affirmative representations about the about the qualities of DeckOver.

157. Upon information and belief, Defendants still have not made full

**CLASS ACTION COMPLAINT**

and adequate disclosures, and continue to defraud consumers by concealing material information regarding the DeckOver and the performance and quality of DeckOver.

158.   Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased DeckOver (or would have paid less for it). The actions of Plaintiffs and the Class were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class.

159.   Plaintiffs and the Class were uniformly exposed to advertising by Defendants – including but not limited to the advertisements and representations in Home Depot locations, on Home Depot's website, and on DeckOver containers and labeling – before or at the time they purchased DeckOver. Plaintiffs and Class members relied upon Defendants representations and omissions regarding the advertised quality and characteristics of DeckOver in deciding to purchase DeckOver.

160.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they did not receive the value of the premium price paid for DeckOver, in addition to other monetary losses and property damage sustained.

161.   Accordingly, Defendants are liable to Plaintiffs and the Class for damages in an amount to be proven at trial.

162.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V

**CLASS ACTION COMPLAINT**

## NEGLIGENT MISREPRESENTATION

### Against All Defendants

### (On Behalf of the Nationwide Class, or in the Alternative, the Michigan and Oregon Classes)

163.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

164.    Plaintiffs bring this claim under California law on behalf of the Nationwide Class.  In the alternative, this claim is pled by Plaintiffs on behalf of the Michigan and Oregon Classes under the laws of those states.

165.    Defendants manufactured, marketed, advertised, sold, and represented DeckOver to Plaintiffs and Class members as a deck resurfacer and restorative product.

166.    Defendants made numerous material misrepresentations regarding DeckOver, including that DeckOver "brings new life to old wood and concrete surfaces," "conceals cracks and splinters up to 1/4", creates a "slip-resistant finish that also resists cracking and peeling," resists cracking, peeling, and mildewing, can be used in "waterproofing," "revives wood & composite decks [and other surfaces]," and is "great for concrete pool decks, patios & sidewalks."

167.    These representations are false and misleading because DeckOver does not possess these qualities and capabilities and actually results in decking and other surfaces requiring greater upkeep and having a shorter lifespan by requiring repairs due to DeckOver's premature failure. Furthermore, DeckOver fails to conceal cracks, results in bubbling, cracking, peeling, and mildew, is not durable, does not properly adhere, is not long-lasting, and does not "rejuvenate" decks or make them look like "new."

168.    At the time of sale, Defendants had actual or constructive notice of DeckOver's propensity to prematurely fail, including through online complaints,

in-store complaints at The Home Depot, or through complaints made directly to Defendants over the telephone or through their websites. Thus, Defendants either knew their representations about DeckOver were false or they had no reasonable grounds for believing that their representations were true.

169.   Defendants also failed to disclose, concealed, suppressed and omitted material information concerning DeckOver, including the DeckOver is susceptible to cracking, peeling, flaking, chipping, bubbling, separating, generally degrading and otherwise prematurely failing. Defendants had a duty to disclose this information as set forth herein. Defendants intended that Plaintiffs and Class members rely upon Defendants' material misrepresentations and omissions to purchase DeckOver, and Plaintiffs reviewed and reasonably relied upon Defendants' false advertising, marketing, and other misrepresentations and omissions in deciding to purchase DeckOver.

170.   As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members have been damaged in an amount to be determined at trial, including repair and replacement costs and/or damages to other property.

## COUNT VI

## BREACH OF EXPRESS WARRANTY

### Against All Defendants

### (On Behalf of the Nationwide Class, or in the

### Alternative, the Michigan and Oregon Classes)

171. Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

172. Plaintiffs bring this claim under California law pursuant to CAL. COM. CODE § 2313 on behalf of the Nationwide Class.  In the alternative, this claim is pled by Plaintiffs on behalf of the Michigan and Oregon Classes under

the laws of those states.

173.    Pursuant to CAL. COM. CODE § 2313, an affirmation of fact, promise, or description made by the seller to the buyer which relates to the goods and becomes a part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation, promise, or description.

174.    DeckOver is accompanied by a limited warranty that provides the following in pertinent part:

> **LIMITED WARRANTY**
>
> Behr Process Corporation warrants that this product meets Behr's manufacturing specifications. If this product is found not to meet our manufacturing specifications upon inspection by our representative, Behr Process Corporation will, at its option and upon presentation of proof-of-purchase (the original receipt), either furnish an equivalent amount of new product or refund the original purchase price of this product to you. **This warranty excludes (1) labor and costs of labor for the application or removal of any product, and (2) any incidental or consequential damages, whether based on breach of express or implied warranty, negligence, strict liability or any other legal theory.**[40]

175.    Despite the terms of the express warranty, BEHR Defendants have failed to provide refunds or adequate replacement products when the DeckOver inevitably prematurely fails. Instead, BEHR Defendants' (if they even return

---

[40] http://www.behr.com/consumer/products/wood-stains-finishes-cleaners-and-strippers/behr-premium-deckover (last visited June 22, 2017) (emphasis in original).

consumers' calls or do anything at all) simply provide replacement DeckOver that is equally susceptible to the same failures and routinely experiences premature degradation. Accordingly, BEHR Defendants' limited remedy of providing replacement DeckOver is an inadequate remedy under the terms of the limited warranty such that the warranty fails of its essential purpose.

176.    Furthermore, all Defendants' advertise DeckOver in a manner that gives rise to additional express warranties arose by representation. Specifically, DeckOver advertising and product labels expressly warrant, *inter alia*, that:

- DeckOver "conceals cracks and splinters up to ¼", and creates a smooth, slip-resistant finish that also resists cracking and peeling";

- DeckOver is "long-lasting";
- DeckOver "brings new life to old wood and concrete"; and
- "[M]ore than a stain, [DeckOver] extends the life of your deck, fills cracks, and covers splinters."

177.    The Home Depot jointly advertise and market DeckOver with BEHR Defendants.    The Home Depot promotes these same purported qualities and characteristics in its print, in-store, and other advertising for DeckOver in its capacity as the exclusive distributor of DeckOver.

178.    These additional promises also became part of the basis of the bargain between Plaintiffs and consumers, on the one hand, and Defendants, on the other hand, and created collective express warranties that DeckOver would conform to Defendants' affirmations and promises. Under the terms of these additional express warranties, Defendants are obligated to replace the DeckOver Products sold to Plaintiffs and Class members, as well as to repair any structural damages the DeckOver caused.

179.    Any purported warranty limitations excluding (a) labor and costs of

**CLASS ACTION COMPLAINT**

labor for application and removal of DeckOver and (b) incidental and consequential damages, are procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302. Defendants knew or should have known that DeckOver is susceptible to premature failure; Defendants had unequal bargaining power and misrepresented the reliability, quality, performance, and qualities of DeckOver; and the limited remedies in the BEHR Defendants' limited warranty unreasonably favor Defendants and fail Plaintiffs' reasonable expectations concerning product performance. For the same reasons, any purported unilateral or one-way fee-shifting provisions in the BEHR Defendants' T&C are unconscionable and, therefore, unenforceable.

180.   Defendants breached their express warranties by supplying DeckOver in a condition that does not satisfy its express warranty obligations and by failing to compensate Plaintiffs and Class members for damages caused by the DeckOver Products.

181.   Plaintiffs have complied with the terms of the DeckOver limited warranty and DeckOver application instructions. Plaintiffs have made a demand upon Defendants to perform under the warranty terms, but Defendants have failed to comply with those terms.

182.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and Class members have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to decks, patios, and other structures or property.

## COUNT VII

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### Against All Defendants

### (On Behalf of the Nationwide Class, or in the

### Alternative, the Michigan and Oregon Classes)

183.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

184.   Plaintiffs bring this claim under California law pursuant to CAL. COM. CODE § 2314 on behalf of the Nationwide Class.  In the alternative, this claim is pled by Plaintiffs on behalf of the Michigan and Oregon Classes under the laws of those states.

185.   Pursuant to CAL. COM. CODE § 2314, a warranty that goods are merchantable is implied in a contract for sale of goods if the seller is a merchant with respect to the specific goods.

186.   To be "merchantable", goods must be fit for the ordinary purposes for which such goods are used. CAL. COM. CODE § 2314(2)(C).

187.   Defendants are "merchants" within the meaning of CAL. COM. CODE § 2104 with respect to acrylic architectural coatings like DeckOver, as Defendants are in the business of manufacturing, designing, supplying, marketing, advertising, warranting, and/or selling the DeckOver Products.

188.   Defendants therefore impliedly warranted to Plaintiffs (and to Plaintiffs' agents) and Class members that DeckOver is of a certain quality, free from defects, fit for the ordinary purpose of resurfacing decks and similar structures, and suitable for providing protection to decks, patios, and other similar structures form harsh weather conditions, and that DeckOver is long-lasting and a better alternative to using ordinary deck paints and stains or simply replacing a deck.

189.   However, DeckOver is unfit for ordinary use and is not of merchantable quality as warranted by Defendants at the time of sale because the DeckOver is defective and have the propensity to crack, peel, flake, chip, bubble, separate, and generally prematurely fail and degrade. Before purchase, Plaintiffs could not have readily discovered that the DeckOver Products were not merchantable for use as a deck resurfacing and restoration product, were not of the

same quality as those generally acceptable in the trade, and did not conform to the quality previously represented.

190.   Defendants have not sufficiently (*i.e.* specifically and conspicuously) disclaimed the implied warranty of merchantability, including any remedy for recovery of labor and costs of labor associated with application and removal of DeckOver.

191.   Defendants have failed to provide adequate remedies under their implied warranties, which have caused the implied warranties to fail their essential purpose, thereby permitting the remedies sought herein under these implied warranties.

192.   Any purported limitations in the DeckOver limited warranty, including limiting the exclusive remedy to a refund or replacement, are procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302. Defendants knew or should have known that DeckOver is susceptible to premature failure; Defendants had unequal bargaining power and misrepresented the reliability, quality, performance, and qualities of DeckOver; and the limited remedies unreasonably favor Defendants and fail Plaintiffs' reasonable expectations for product performance. For the same reasons, any purported unilateral or one-way fee-shifting provisions in the BEHR Defendants' T&C are unconscionable and, therefore, unenforceable.

193.   Plaintiffs gave Defendants actual or constructive notice of the breaches of these warranties, and Defendants have failed to cure these breaches.

194.   To the extent privity is required, Defendants were and are in privity with each of the Plaintiffs and class members by law or by fact. Plaintiffs have had sufficient direct dealings with Defendants or their authorized dealers – including The Home Depot – representatives, and agents to establish privity of contract.

195.   Alternatively, Plaintiffs and class members are intended third-party

**CLASS ACTION COMPLAINT**

beneficiaries of contracts (including Defendants' implied warranties) between Defendants and their dealers, representatives, and agents; Defendants' advertisements were aimed at Plaintiffs and Class members; and Defendants' warranties were written for the benefit of Plaintiffs and Class members as end users of DeckOver Products. Defendants' authorized dealers, representatives, and agents, on the other hand, were not intended to be the ultimate consumers of DeckOver Products and have no rights under the Defendants' limited warranty; these intermediary entities made no changes to the DeckOver Product, nor made any additions to (and merely adopted) the warranties issued by Defendants. Accordingly, Defendants are estopped from limiting claims for common law and statutory violations based on a defense of lack of privity.

196.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Class members have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to decks, patios, and other structures or property.

197.   Plaintiffs demand judgment against Defendants for compensatory damages for themselves and each class member, for the establishment of a common fund, plus additional remedies as this Court deems fit.

<u>**COUNT VIII**</u>

**BREACH OF THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

**Against All Defendants**

**(On Behalf of the Nationwide Class, or in the Alternative, the Michigan and Oregon Classes)**

198.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

199.   Plaintiffs bring this claim under California law pursuant to CAL. COM. CODE § 2315 on behalf of the Nationwide Class. In the alternative, this claim is pled by Plaintiffs on behalf of the Michigan and Oregon Classes under the laws of those states.

200.   Pursuant to CAL. COM. CODE § 2315:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is ...   an implied warranty that the goods shall be fit for such purpose.

201.   BEHR Defendants are in the business of manufacturing, designing, supplying, marketing, advertising, warranting, and selling DeckOver.

202.   Defendants impliedly warranted to Plaintiffs (and to Plaintiffs' agents) and Class members that DeckOver is fit for the particular purpose of restoring and revitalizing old or worn decks and other surfaces, thereby obviating the need to replace decks and similar structures. Defendants also impliedly warranted that DeckOver is fit for the particular purpose of providing protection to decks and other structures from harsh weather conditions and lasting longer than ordinary deck paints or stains.

203.   DeckOver uniformly fails to serve its stated purpose. DeckOver is therefore unfit for its particular purpose.

204.   Specifically, at the time Plaintiffs purchased DeckOver, Defendants knew that DeckOver is used as an exterior resurfacer and restoration product for decks and related structures subject to certain extreme conditions, including high temperature and humid weather in the summer and freezing temperatures, ice, snow, and dry air in the winter.

CLASS ACTION COMPLAINT

205. Plaintiffs (and Plaintiffs' agents) as well as Class members reasonably relied on the skill and judgment of Defendants – large corporations in the business of manufacturing, marketing, and selling home improvement supplies, including paints, stains, and coatings – in furnishing a suitable product for this purpose. However, DeckOver is not suitable for this purpose and was not suitable for this purpose at the point of sale because DeckOver has the propensity to prematurely fail despite proper application, does not withstand harsh weather, and does not last longer than ordinary deck paint or stain.

206. Defendants have not sufficiently (*i.e.* specifically and conspicuously) disclaimed the implied warranty of fitness for a particular purpose, including any remedy for recovery of labor and costs of labor associated with application and removal of DeckOver.

207. Defendants have failed to provide adequate remedies under their implied warranties, which have caused the implied warranties to fail their essential purpose, thereby permitting the remedies sought herein under these implied warranties.

208. Any purported limitations in the DeckOver limited warranty, including limiting the exclusive remedy to a refund or replacement, are procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302. Defendants knew or should have known that DeckOver is susceptible to premature failure; Defendants had unequal bargaining power and misrepresented the reliability, quality, performance, and qualities of DeckOver; and the limited remedies unreasonably favor Defendants and fail Plaintiffs' reasonable expectations for product performance. For the same reasons, any purported unilateral or one-way fee-shifting provisions in the BEHR Defendants' T&C are unconscionable and, therefore, unenforceable.

209. Plaintiffs gave Defendants actual or constructive notice of the breaches of these warranties, and Defendants have failed to cure these breaches.

**CLASS ACTION COMPLAINT**

210.   To the extent privity is required, Defendants were and are in privity with each of the Plaintiffs and class members by law or by fact. Plaintiffs have had sufficient direct dealings with Defendants or their authorized dealers – including The Home Depot – representatives, and agents to establish privity of contract.

211.   Alternatively, Plaintiffs and class members are intended third-party beneficiaries of contracts (including implied warranties) between Defendants and their dealers, representatives, and agents; Defendants' advertisements were aimed at Plaintiffs and Class members; and Defendants' warranties were written for the benefit of Plaintiffs and Class members as end users of DeckOver Products. Defendants' authorized dealers, representatives, and agents, on the other hand, were not intended to be the ultimate consumers of DeckOver Products and have no rights under the Defendants' limited warranty; these intermediary entities made no changes to the DeckOver Product, nor made any additions to (and merely adopted) the warranties issued by Defendants. Accordingly, Defendants are estopped from limiting claims for common law and statutory violations based on a defense of lack of privity.

212.   As a direct and proximate result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs and Class members have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to decks, patios, and other structures or property.

213.   Plaintiffs demand judgment against Defendants for compensatory damages for themselves and each class member, for the establishment of a common fund, plus additional remedies as this Court deems fit.

## COUNT IX

## UNJUST ENRICHMENT

**CLASS ACTION COMPLAINT**

**(PLEADING IN THE ALTERNATIVE)**

**Against All Defendants**

**(On Behalf of the Nationwide Class, or in the**

**Alternative, the Michigan and Oregon Classes)**

214.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

215.   Plaintiffs bring this claim under California law on behalf of the Nationwide Class.  In the alternative, this claim is pled by Plaintiffs on behalf of the Michigan and Oregon Classes under the laws of those states.

216.   This claim is pled in the alternative to the other claims pled herein.

217.   As described herein, Defendants marketed, distributed, and sold DeckOver as a long-lasting, durable deck resurfacing and restoration product without disclosing the truth about the product, namely that DeckOver prematurely fails in that it peels, bubbles, strips off, and cracks within months after proper application.

218.   As the intended and expected result of their conscious wrongdoing, Defendants have profited and benefited from Plaintiffs' and Class members' purchase of DeckOver.

219.   Defendants have voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendants' misconduct, Plaintiffs and the Class were not receiving products of the quality, nature, fitness, or value that had been represented by Defendants, and that reasonable consumers expected.

220.   Defendants have been unjustly enriched by their fraudulent and deceptive withholding of benefits to Plaintiffs and the Class, at the expense of these parties.

221.   Equity and good conscience militate against permitting Defendants to retain these profits and benefits.

Defendants ill-gotten gains should be disgorged, and Plaintiffs and members of the proposed Nationwide Class are entitled to restitution of the profits unjustly obtained by Defendants, with interest.

**COUNT X**

**CLAIM FOR DECLARATORY AND**

**INJUNCTIVE AND/OR EQUITABLE RELIEF**

**CAL. CIV. PROC. CODE § 1060**

**Against All Defendants**

**(On Behalf of the Nationwide Class, or in the**

**Alternative, the Michigan and Oregon Classes)**

222.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

223.   This claim is pled on behalf of Plaintiffs individually and the Nationwide Class, and, alternatively, on behalf of the Michigan and Oregon Classes under the laws of those states.

224.   Defendants designed, manufactured, produced, tested, inspected, marketed, distributed, and sold DeckOver that prematurely fails as described above.

225.   There exists an actual controversy, over which this Court has jurisdiction, between Plaintiffs and Defendants concerning the questions identified in the paragraph 118, *supra*.

226.   CAL. CIV. PROC. CODE § 1060 provides the following:

> Any person interested under . . . a contract, . . . in cases
> of actual controversy relating to the legal rights and
> duties of the respective parties, bring an original action

or cross-complaint . . . for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract. He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties . . . .

227.   That section permits this Court to declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

228.   Accordingly, Plaintiffs respectfully request that this Court issue and order declaring the following:

      a.   DeckOver has a propensity to prematurely fail, which causes consumers to suffer damages, including to other property;

      b.   Defendants knew and/or should have known that DeckOver had a propensity to prematurely fail, which would cause consumers to suffer damages;

      c.   Defendants are required to disclose to consumers, at their own cost, that DeckOver's propensity to prematurely fail causes damages, including to other property;

      d.   Defendants are required to review and re-audit all prior customer claims, including claims previously denied in whole or in part.

**CLASS ACTION COMPLAINT**

229.  A judicial declaration is necessary in order that Plaintiffs and the Class members may ascertain their rights and duties. Plaintiff and Class members suffered damages at the time of their purchase of DeckOver and have paid or will have to pay future repair and/or replacement costs for their patios, decks, and other structures as a direct result of DeckOver prematurely failing.

230.  The requested declaratory relief will generate common answers that will resolve controversies that lie at the heart of this litigation and will allow Plaintiffs to obtain relief that directly redresses the injury suffered. Resolving these issues in this class action will eliminate the need for continued and repeated litigation.

**COUNT XI**

**VIOLATIONS OF MICHIGAN CONSUMER PROTECTION ACT**

**MICH. COMP. LAWS §§ 445.901, *et seq.* ("MCPA")**

**Against All Defendants**

**(On Behalf of the Michigan Class)**

231.  Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

232.  Plaintiff Elger asserts this count in the alternative, and brings this count individually and on behalf of members of the Michigan Class defined above in the event that a Nationwide Class is not certified.

233.  The MCPA is designed to provide a remedy for consumers who are injured by deceptive business practices. The MCPA expressly allows for class actions on behalf of consumers who have suffered a loss as a result of a violation of the Act. MICH. COMP. LAWS § 445.911(3).

234.  Plaintiff Elger, Michigan Class members, and Defendants fall within the definition of "person" under the MCPA.

**CLASS ACTION COMPLAINT**

235. Defendants' conduct alleged herein constitutes unfair, unconscionable, and deceptive acts in violation of the MCPA, including, but not necessarily limited to, the following sections:

a.   § 445.903(n): causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction;

b.   § 445.903(s): failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;

c.   § 445.903(bb): making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and

d.   § 445.903(cc): failing to reveal facts which are material to the transaction in light of representations of fact made in a positive manner.

236. Specifically, as alleged herein, Defendants knowingly made (or should have known they were making) misrepresentations about the quality, qualities, characteristics, performance, and reliability of DeckOver.

237. Defendants concealed, omitted, and failed to disclose the truth about DeckOver Products in order to make sales and increase profits.

238. Because of Defendants' violation of the MCPA, Plaintiff Elger and members of the Michigan Class were injured in that they overpaid for DeckOver and did not receive the benefit of their bargain, and, as a result of the failures of

**CLASS ACTION COMPLAINT**

the DeckOver Products, their properties have suffered a diminution in value and Plaintiffs and Class members have been required to pay out of pocket for repairs and restoration of their decks and other structures. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

239.    Plaintiffs demand actual damages, punitive damages, reasonable attorneys' fees, costs, and any other compensatory or consequential damages allowed by law.

### COUNT XII
### VIOLATIONS OF THE OREGON UNLAWFUL
### TRADE PRACTICES LAW
### OR. REV. STAT §§ 646.605, *et seq.* ("OUTPL")
### Against All Defendants
### (On Behalf of the Oregon Class)

240.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

241.    Plaintiff Ross asserts this count in the alternative, and brings this count individually and on behalf of members of the Oregon Class defined above in the event that a Nationwide Class is not certified.

242.    Defendants are engaged in a "trade" and "commerce" within the meaning of the OUTPL. OR. REV. STAT. § 646.605(8).

243.    Defendants are "persons" within the meaning of the OUTPL. OR. REV. STAT. §§ 646.605(4), 646.607, and 646.608.

244.    Plaintiffs' and each and every Class members' purchase of DeckOver constitutes a "sale" within the meaning of the OUTPL. OR. REV. STAT. § 646.607.

245.    Defendants have advertised DeckOver within the meaning of the OUTPL. OR. REV. STAT. § 646.608.

**CLASS ACTION COMPLAINT**

246.   The policies, acts, and practices of Defendants as described herein were intended to result in the sale of DeckOver to Plaintiffs and Class members.

247.   As alleged herein, Defendants have engaged in unconscionable tactics, false advertising, deceptive practices, unlawful methods of competition, and/or unfair acts as defined in the OUTPL, to the detriment of Plaintiffs and Oregon Class members. Defendant's unconscionable tactics and deceptive practices have been intentionally, knowingly, and unlawfully perpetrated upon Plaintiffs and Oregon Class members and have violated and continue to violate the OUTPL.

248.   In violation of OR. REV. STAT. § 646.608, Defendants have engaged and continue to engage in at least the following unlawful business and trade practices in connection with the sale of DeckOver:

a.   § 646.608(1)(e): representing that goods have characteristics, uses, benefits, or qualities that they do not actually have;

b.   § 646.608(1)(g): representing that goods are of a particular standard, quality, or grade when they are of another;

c.   § 646.608(1)(i): advertising goods with intent not to provide the goods as advertised;

d.   § 646.608(1)(t): concurrent with tender or delivery of goods, fails to disclose any known material defect or material nonconformity; and

e.   § 646.608(1)(u): engages in any other unfair or deceptive conduct in trade or commerce.

CLASS ACTION COMPLAINT

249.    The standardized practice and advertisements utilized and promoted for DeckOver uniformly applied to Plaintiff and Class members, all of whom were uniformly exposed to and relied on advertising for DeckOver, including (at minimum) on DeckOver product labeling and on in-store advertising or on Home Depot's website. As a result of Defendants' deceptive and unfair advertising and trade practices, as well as Defendants' material omissions of fact concerning the quality of DeckOver, Plaintiffs and the Class purchased DeckOver that they otherwise would not have purchased, or for which they would have paid less.

250.    As a result of Defendant's unlawful conduct, Plaintiffs and Oregon Class members have incurred economic damages including, but not limited to, out of pocket expenses, damage to property, and uncompensated labor.

251.    In addition to compensatory damages, Plaintiffs seek recovery of attorneys' fees, costs of litigation, punitive damages, and other equitable relief as determined by the court pursuant to Or. Rev. Stat. § 646.638.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs individually and on behalf of all others similarly situated, pray for relief and judgment against Defendants as follows:

A.    For an order certifying the proposed class, appointing Plaintiffs and their counsel to represent the proposed class and notice to the proposed class to be paid by Defendants;

B.    For actual damages, treble damages as authorized by relevant consumers fraud statutes, and/or any other form of monetary relief provided by law;

C.    For punitive damages, as otherwise applicable;

D.    For an order awarding Plaintiffs and the Class restitution, disgorgement, or other equitable relief as the Court deems proper;

E.    For an order enjoining Defendants from their unlawful conduct;

CLASS ACTION COMPLAINT

F.    For declaratory relief;

G.    For an order awarding Plaintiffs and the Class pre-judgment and post-judgment interest as allowed under the law;

H.    For an order awarding Plaintiffs and the Class reasonable attorney's fees and costs of suit, including expert witness fees; and

I.    For an order awarding such other and further relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT

# JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all claims so triable.

Dated:  June 26, 2017                    Respectfully submitted,


By:   */s/ Jonathan Michaels*_____
Jonathan Michaels
Kathryn Harvey
**MLG AUTOMOTIVE LAW, APLC**
2801 W. Coast Highway Suite 370
Newport Beach, CA 92663
Telephone: (949) 581-6900
Facsimile: (949) 581-6908
Email: jmichaels@mlgautomotivelaw.com
          kharvey@mlgautomotivelaw.com

**CHIMICLES & TIKELLIS LLP**
Steven A. Schwartz
Benjamin F. Johns
Andrew W. Ferich
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
E-mail: SAS@chimicles.com
          BFJ@chimicles.com
          AWF@chimicles.com


*Counsel for Plaintiffs and*
*the Putative Class*

**CLASS ACTION COMPLAINT**